IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

PANSY M. YOCUM                                                         PLAINTIFF

v.                      Civil No. 05-4014

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                           DEFENDANT

## MEMORANDUM OPINION

Pansy M. Yocum (hereinafter "Plaintiff"), appeals from the decision of the Social Security Administration (hereinafter "Commissioner"), denying her claims for a period of disability and disability insurance benefits (hereinafter "DIB"), and Child's Survivor Insurance Benefits (hereinafter "SIB") pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, as well as supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI, *42 U.S.C. § 1381a*.

Plaintiff, whose date of birth is May 20, 1978, was 26 years of age at the time of the ALJ's decision (T. 15-29, 662, 665, 666). Plaintiff has the equivalent of a high school education (T. 667). Plaintiff's past relevant work includes work as a certified nurse's aid (T. 670).

Plaintiff alleges an inability to work due to: seizure disorder; migraine headaches; history of head injury; nausea; inability to focus or concentrate; GERD; somatization disorder; major depressive disorder, with periodic suicidal ideation; dysthymia; personality disorder; gastric ulcer; hypogylcemia; anxiety; benign ovarian cysts; and, obesity.

The Social Security Administration denied plaintiff's applications initially and on reconsideration. Plaintiff then requested and received a hearing before an Administrative Law

Judge (hereinafter "ALJ"), which hearing was conducted on August 9, 2004, before ALJ Michael Kirkpatrick in Texarkana, Arkansas (T. 659-696). The ALJ rendered a decision adverse to Plaintiff on October 22, 2004 (T. 15-29).

The Plaintiff then petitioned the Appeals Council for review on October 28, 2004 (T. 10). The Appeals Council denied Plaintiff's request for review on January 27, 2005 (T. 7-9), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the unfavorable decision (Doc. #1, 7, 9). This matter is now before the undersigned by consent of the parties (Doc. #4).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. See *Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)*. Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See *Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000)*. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, see *id.*, or because we would have decided the case differently. See *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993)*.

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial

AO72A
(Rev. 8/82)

gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*. Such documentation, as referred to within the regulations, is referred to as the PRT factors, mentioned previously.

**Discussion:**

The ALJ evaluated the Plaintiff's claim according to the five-step sequential evaluation analysis prescribed by the social security regulations. See *20 C.F.R. §§ 404.1520(a)-(f);* see also *Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987)* (describing five-step analysis). At the first step, the ALJ found there was no evidence that Plaintiff had engaged in substantial gainful activity since her alleged onset date (T. 17). At the second step, the ALJ determined that the Plaintiff had severe, medically determinable impairments[1], but no impairment or impairments that meet or equal the level of severity for any impairment listed in *Appendix 1, Subpart P, Regulations No. 4* (T. 18). See *20 C.F.R. § 404.1521; Bowen v. Yuckert, supra*. At Step 4 of the sequential analysis, the ALJ determined that Plaintiff has no physical, work-related, functional limitations, but should not work in environments which might expose her to hazards, consistent with seizure precautions. The ALJ also determined that Plaintiff had the mental residual functional capacity to perform simple, routine, unskilled tasks, but not detailed or complex tasks.

> In other words, I find that the claimant retains the functional capacity to perform a wide range of simple, routine, unskilled tasks at all exertional levels.

(T. 28),

Because the ALJ determined that Plaintiff had no past relevant work, the analysis proceeded to the fifth step. At the final step of the sequential analysis, the ALJ relied upon the testimony of the vocational expert (hereinafter "VE"), along with consideration of the criteria set forth in the Medical-Vocational Guidelines (hereinafter "the grids"). Here, the ALJ

---

[1]The ALJ found that Plaintiff's severe impairments included: "mood disorder, somatization disorder, headaches, and a seizure disorder (most probably pseudoseizures)" (T. 18).

-4-

determined that Plaintiff was not disabled, and noted that the VE testimony established that there are jobs in sufficient numbers in the national economy which Plaintiff can perform (T. 26-29).

Plaintiff raises several arguments on appeal, however, the primary question before the undersigned is whether the ALJ properly considered Plaintiff's alleged lack of financial resources with which to obtain medication and treatment. This issue is relevant in light of the ALJ's finding that Plaintiff "lacks credible medical evidence" to support her nonexertional claims (T. 24).

Generally, if a claimant does not follow or obtain a prescribed treatment plan without a good reason, he or she will not be found disabled. *20 C.F.R. § 416.930(b) (1984)*. However, the lack of financial resources to pay for medical treatment and/or medication may justify the failure to pursue treatment or follow a treatment plan. *Brown v. Heckler 767 F.2d 451, 452 (8th Cir.1985); Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir.1984).*

Here, the issue of a lack of financial means was raised by the Plaintiff on a number of occasions. Despite Plaintiff's initiative to obtain treatment from charitable sources, there are numerous record citations to Plaintiff's lack of funds with which to obtain needed medications and specialized treatment not available on a charitable basis (T. 132, 133, 302, 370, 377, 558). Although Plaintiff's treating physicians routinely administered sample medications to Plaintiff, the samples did not encompass all medications prescribed for Plaintiff (T. 363, 362, 374, 445, 560, 561, 614, 472). Plaintiff reportedly took the sample medications provided at no cost, while forgoing the treatment of the prescription medications for which no samples were available. Plaintiff had no health or prescription medication insurance (T. 532). Plaintiff's mother helped

AO72A
(Rev. 8/82)

her by providing Plaintiff with a place to live (T. 572, 667, 101, 576). Since Plaintiff benefitted from her mother's food stamps, she could not obtain her own food stamps (T. 668, 573, 576). After giving birth to her child in 2004, Plaintiff obtained food stamps coverage of her own (T. 573). Although Plaintiff was able to obtain medicaid coverage in 2004, medicaid "refused" to provide some of her mental health medications (T. 573, 576).

The record contains documentation that despite being a low cost mental health resource facility, the Southwest Arkansas Counseling and Mental Health Center, Inc., charged Plaintiff a nominal fee for her treatment. However, Plaintiff was unable to pay the nominal fee (T. 461, 489). The undersigned also notes that Plaintiff resided in De Queen, Arkansas with her mother, while her primary treating physician and neurologist were located in Texarkana, Arkansas, and Little Rock, Arkansas, respectively (T. 272-288, 298-337, 339-346, 364-390, 508-545, 555-562, 617-623). Thus, transportation for treatment of her non-epileptic seizure disorder was another financial hurdle for Plaintiff.

The ALJ does not discuss the impact of plaintiff's alleged lack of finances on her ability to access treatment and medications. This constitutes error. To the extent the ALJ found plaintiff not entirely credible, we note the previously mentioned record citations in which the Plaintiff testified to and otherwise reported her lack of financial means. The record reflects Plaintiff had no income and no money or insurance with which to obtain medical treatment and/or prescription medications. Despite the Plaintiff's alleged inability to obtain treatment due to a lack of financial means, the ALJ failed to address this issue when determining that Plaintiff was not credible or disabled.

Certainly, the failure to follow a prescribed course of treatment may be excused by a

AO72A
(Rev. 8/82)

plaintiff's lack of funds. *Tome v. Schweiker, 724 F.2d at 714.* Likewise, medication or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered. To a poor person, a medicine that he cannot afford to buy does not exist. *Dover v. Bowen, 784 F.2d 335, 337 (8th Cir.1986); Benson v. Heckler, 780 F.2d 16, 18 (8th Cir.1985); Tome v. Schweiker, 724 F.2d at 714.*

Upon remand, the ALJ should consider and discuss what effect, if any, Plaintiff's alleged lack of financial means to obtain her prescribed medications had on the Plaintiff's claims for disability, as well as Plaintiff's credibility.

The ALJ also disregarded the opinion of Plaintiff's treating therapist, when he erroneously identified the psychologist at Southwest Arkansas Regional Health Center, Sandra J. Wilson, M.A., L.P.E., as a social worker. Sandra J. Wilson, M.A., L.P.E., is a licenced psychological examiner, not a social worker. Ms. Wilson, in conjunction with nurses and psychiatrists, treated Plaintiff at Southwest Arkansas Regional Health Center for a significant period of time, yet her opinion was completely discounted based upon the ALJ's characterization of her position as that of a social worker rather than that of a licensed psychological examiner. While it is true that the opinion of a social worker is not controlling or binding on the ALJ because a social worker is not an "acceptable source" of medical evidence upon which the ALJ may rely, *20 C.F.R. §§ 404.1513(a), 416.913(a)*, such does not apply in the instant case. The title of social worker is not an accurate characterization of Ms. Wilson's position or opinion. Therefore, upon remand, the ALJ should at least consider the opinion of Ms. Wilson, Plaintiff's treating licensed psychological examiner.

Additionally, upon remand, the ALJ should consider the pain medications prescribed for

Plaintiff when evaluating her credibility. Despite Plaintiff's persistent complaints of pain (T. 677, 687, 100, 127, 133, 136, 171, 203, 205, 210, 212, 224, 226, 230, 242, 243, 254, 256, 277, 300, 357), the ALJ failed to mention or consider the pain medications prescribed or administered to Plaintiff. Said medications included: Lortab; Talwin; and Demerol/Phenergan injections (T. 677, 682, 121, 183, 136, 139). Yet, the ALJ's decision contains no mention of Plaintiff's prescriptions or administration of said medications, nor her alleged inability to obtain same. This, too, is error.

The undersigned acknowledges that the ALJ's decision may be the same after proper analysis. Nonetheless, proper analysis must occur. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).*

**Conclusion:**

Accordingly, we conclude that the ALJ's decision denying Plaintiff's applications for benefits is not supported by substantial evidence and should be reversed. We further conclude that this matter should be remanded to the Commissioner for further consideration consistent with this decision.

ENTERED this 27th day of March, 2006.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)